# Exhibit A

State of Louisiana
Parish of East Baton Rouge
City of Baton Rouge

## *Misdemeanor Affidavit*

**CITY OF BATON ROUGE**

**VS**

**TAYLOR, ERNEST**

Arraignment Date:   December 14, 2012

Case Number:   12-CR-106939S

Criminal Affidavit #:  12-CR-106939

RACE/SEX:   BLACK / MALE
DOB:
DL#:
SSN:

Personally came and appeared before the undersigned authority in and for said Parish and City, BARDIN, DEVON  who did depose and say, based upon information and belief that

    TAYLOR, ERNEST (defendant)

on or about the date(s) indicated below, within the limits of the City of Baton Rouge, La, did violate provisions of the Baton Rouge City Ordinance in the following particulars:

Counts: 1, Date: 10-13-12, Statute: [13:95.3] POSS OF WEAPONS WHERE ALC BEV SOLD/CONSUMED
    in that he/she did have in his possession a firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, in a premises where alcoholic beverages are sold and/or consumed on the premises,

Counts: 2, Date: 10-13-12, Statute: [13:108] RESISTING AN OFFICER
    in that he/she did intentionally resist, oppose or obstruct OFC. J. THOMAS  acting in his official capacity and authorized to make a lawful arrest, when   ERNEST TAYLOR   knew or had reason to know the officer was acting in his official capacity,

Counts: 3, Date: 10-13-12, Statute: [11:283] HEADLIGHTS REQ. (FAIL. TO DIM HEADLIGHT) -138
    in that he/she did operate a motor vehicle upon the streets of the city between sunset and sunrise, or at such times as atmospheric conditions requires without having headlights turned on as required by the highway regulatory laws of the state of Louisiana,

All of which is contrary to the Ordinances of the City of Baton Rouge, Louisiana, and against the peace and dignity of the same.

SIGNED _____

CITY OF BATON ROUGE vs TAYLOR, ERNEST; Case Number: 12-CR-106939

Sworn to and subscribed before me t̲h̲e̲ ̲ ̲2̲9̲ day of ̲N̲o̲v̲.̲,̲ ̲2̲0̲1̲2̲

_____
Notary Public or Clerk of Court

17022120-2760

## Arrestee Information Form

10/13/12

[x] City Police    [ ] State Police    [ ] Sheriff    [ ] Other

Subject's Name: **Taylor** (Last Name)  **Ernest** (First Name)  **L** (Middle Name)

Also Known As:

Residence: ███████  baton rouge (City)  la (State)  70806 (Zip Code) — Number and Street

Race: **m**  Sex: **b**  D.O.B. **01/30/60**  Place of Birth **Baton Rouge**  Hgt. **5'08"**  Wgt. **265**  Eyes **brn**  Hair **no**

Marks, Scars, Tattoos, Amputations:

Driver's License ███ — Number / State / Year    Social Security # ███    Other I.D. Number ___ Type / Number    No I.D.

Occupation / Employer / Address

Spouse / Other Relative's Name ___ Address:

Other Relative's Name ___ Address:

Officer's I.D. **P3956**  Officer's Court Date ___ Officer's Name **P. Wennemann**

Officer's I.D. **P10385**  Officer's Court Date ___ Officer's Name **J. Thomas**

Date Arrested: **10/13/12**  Time: **0155**  Place: **4400 Plank Rd.**

### CHARGE(S):

CODE:
- 01 - Probable Cause
- 02 - Affiant Warrant
- 03 - Dist Bench Warrant
- 04 - City Contempt Warrant
- 05 - Remand by Surety
- 06 - Remand District Court
- 07 - Remand City Court
- 08 - Returned on Detainer
- 09 - Returned Court Order
- 10 - Hold
- 11 - Fugitive
- 12 - Other (Specify):

| File Number - Year | Code | Charge | Statute / Ordinance | Ticket Numb |
|---|---|---|---|---|
| 106939-12 | 01 | Poss. of a Firearm Where Alcohol Sold/Consu | 13:95.3 | |
| 106939-12 | 01 | Resisting an Officer | 13:108 | |
| 106939-12 | 01 | Headlights Reaquired | 11:283 | |
| 106939-12 | 11 | FUGITIVE EBRSO | | |
| | | | | |

A short recitation of the facts or events which caused the Defendant to be arrested:

The names of all other persons arrested as a result of the same event(s):

1  4
2  5
3  6

2012 OCT 13  3:38

[ ] N.C.I.C.
[ ] Local
[ ] Printed
[ ] Check for Add-On Charges

_____ Supervisor

☒ City of Baton Rouge                    ☒ : Baton Rouge City Court
                                            : Parish of East Baton Rouge
VERSUS                                      : State of Louisiana

Ernest L. Taylor
Name of Defendant:

## Affidavit of Probable Cause

Before me personally appeared the undersigned law enforcement officer(s) who depose that the following recited facts are true and correct to the best of his knowledge, information and belief, and that based upon these facts, he caused the arrest of the following listed defendant(s) for the listed offense(s).

<u>106939-12</u>
BRPD File No.

| Ernest L Taylor | Black | Male | ██████████ |
|---|---|---|---|
| Defendant Name | Race | Sex | Date of Birth |
| ████████████████ | | | ██████████ |
| Address | | | Social Security Number |
| Headlight Required, Poss. of Firearm Where Alcohol Sold, Resisting an Officer, Fugitive EBRSO | | | 11:283, 13:95.3, 13:108 |
| Charge(s) | | | Statute/City Code Number |

**Synopsis of Probable Cause:**

Affiant advises that on the above stated offenses did occur within the city limits of Baton Rouge and the state of Louisiana. On the above state date at approximately 0145 hours Affiant did observe the Defendant pull from the parking lot of the Boss Lady Lounge (3827 Plank Rd.) without headlights on. Affiant inited a traffic stop upon the Defendant and contacted personaly contacted him. After contact with the Defendant Affiant and assisting officers observed in plainview two rifles inside the vehicle. The Defendant was then placed under arrest. As the Defendant was being escorted by an assisting officer he pulled from the officer's grasp and refused to be handcuffed. The Defendant was able to be cuffed with the help of another officer. Affiant advised that during a warrant check of the Defendant it was found that he was wanted by EBRSO for misdemeanor Aggravated Assault.
Affiant booked the Defendant into Parish Prison.

_____
Affiant

Sworn to and subscribed before me this _____ day of _____ 20____

_____
Notary Public

D08

# Baton Rouge Police Department

Printed by: PC10023 - SMITH,ABLENELL

# Incident Report

## Administration Information

| | | |
|---|---|---|
| Report Number: | 1 2 0 0 1 0 6 9 3 9 0 0 0 | Report Type: ARREST |
| Report Date: | 1 0 / 1 3 / 2 0 1 2  Time: 0 1 3 5 | District/Zone: 1F1 |
| Address: | 04400  PLANK  RD  Apt: | |

| | | | Assign Date: | |
|---|---|---|---|---|
| Report Officer 1 - | P3956 | WENNEMANN,PATRICK | Assign Date: | 1 0 / 1 3 / 2 0 1 2 |
| Report Officer 2- | P10385 | THOMAS,JAMES | Assign Date: | 1 0 / 1 3 / 2 0 1 2 |
| Investigator 1 - | P10285 | DANIELS,JEFFERY | Assign Date: | 1 0 / 1 3 / 2 0 1 2 |
| | | | Review Date: | |
| Investigator 2- | | | Assign Date: | |
| | | | Review Date: | |
| Assigned By: | | | Review Date: | |
| UCR Status: | C | CLEARED BY ARREST | Status Date: | 1 0 / 1 3 / 2 0 1 2 |
| CaseStatus: | | | Status Date: | |

## Primary Offense

| | |
|---|---|
| Offense Type: | 13:95.3  POSS WPN WHERE ALCOHOL SOLD/CC  ☐ Attempted  ☒ Completed |
| Address: | 04400  PLANK  RD |
| City: | State:  Zip: - |
| District/Zone: | 1F1  Location Type: |
| Begin Date: | 1 0 / 1 3 / 2 0 1 2  Time: 0 1 3 5 |
| End Date: | 1 0 / 1 3 / 2 0 1 2  Time: 0 1 3 5 |
| Lighting: | Weather:  Gang Activity: |
| Bias Motive: | Premises Enter:  ☐ Force Used ☐ Home Inv |
| Point Entry: | Point Exit:  Means Entry: |
| Tools Used: | Entry Dir:  Exit Dir: |

☐ B-Buying Receiving
☐ C-Cultivation/Manufacturing/Publishing
☐ D-Distributing/Selling
☐ E-Exploiting Children
☐ O-Operating/Promoting/Assisting
☐ P-Possessing/Concealing
☐ T-Transporting/Transmitting/Importing
☐ U-Using/Consuming
☐ I-Pos With Intent To Sell
☐ X-Other

☐ Consumed Alcohol  ☐ Photo/Video  ☐ Used Computer Equipment  ☐ Used Drugs  ☐ Prints Lifted

Weapons:

Comments:

*Report approved by Michael Cody on 10/18/2012*

**Baton Rouge Police Department**   Printed by: PC10023 - SMITH,ABLENELL   12 - 00106939

## Offense

| Offense Type: | C.C.R.P. ART 575 | FUGITIVE | | ☐ Attempted | ☒ Completed |
|---|---|---|---|---|---|

Address: 04400 [ ] PLANK RD [ ] [ ]

City: [ ]   State: [ ][ ]   Zip: [ ][ ][ ][ ][ ] - [ ][ ][ ][ ]

District/Zone: 1F1   Location Type: [ ]

Begin Date: 1 0 / 1 3 / 2 0 1 2   Time: 0 1 3 5

End Date: 1 0 / 1 3 / 2 0 1 2   Time: 0 1 3 5

Lighting: [ ]   Weather: [ ]   Gang Activity: [ ]

Bias Motive: [ ]   Premises Enter: [ ]   ☐ Force Used   ☐ Home Inv

Point Entry: [ ]   Point Exit: [ ]   Means Entry: [ ]

Tools Used: [ ]   Entry Dir: [ ]   Exit Dir: [ ]

☐ B-Buying Receiving
☐ C-Cultivation/Manufacturing/Publishing
☐ D-Distributing/Selling
☐ E-Exploiting Children
☐ O-Operating/Promoting/Assisting
☐ P-Possessing/Concealing
☐ T-Transporting/Transmitting/Importing
☐ U-Using/Consuming
☐ I-Pos With Intent To Sell
☐ X-Other

☐ Consumed Alcohol   ☐ Photo/Video   ☐ Used Computer Equipment   ☐ Used Drugs   ☐ Prints Lifted

Weapons: [ ] [ ] [ ]

Comments: [ ]

## Offense

| Offense Type: | 13:108 | RESISTING AN OFFICER/CC | ☐ Attempted | ☒ Completed |
|---|---|---|---|---|

Address: 04400 [ ] PLANK RD [ ] [ ]

City: [ ]   State: [ ][ ]   Zip: [ ][ ][ ][ ][ ] - [ ][ ][ ][ ]

District/Zone: 1F1   Location Type: [ ]

Begin Date: 1 0 / 1 3 / 2 0 1 2   Time: 0 1 3 5

End Date: 1 0 / 1 3 / 2 0 1 2   Time: 0 1 3 5

Lighting: [ ]   Weather: [ ]   Gang Activity: [ ]

Bias Motive: [ ]   Premises Enter: [ ]   ☐ Force Used   ☐ Home Inv

Point Entry: [ ]   Point Exit: [ ]   Means Entry: [ ]

Tools Used: [ ]   Entry Dir: [ ]   Exit Dir: [ ]

☐ B-Buying Receiving
☐ C-Cultivation/Manufacturing/Publishing
☐ D-Distributing/Selling
☐ E-Exploiting Children
☐ O-Operating/Promoting/Assisting
☐ P-Possessing/Concealing
☐ T-Transporting/Transmitting/Importing
☐ U-Using/Consuming
☐ I-Pos With Intent To Sell
☐ X-Other

☐ Consumed Alcohol   ☐ Photo/Video   ☐ Used Computer Equipment   ☐ Used Drugs   ☐ Prints Lifted

Weapons: [ ] [ ] [ ]

Comments: [ ]

# Baton Rouge Police Department

Printed by: PC10023 - SMITH,ABLENELL    12 - 00106939

## Offense

| | | |
|---|---|---|
| Offense Type: | 11:283 | HEADLIGHTS REQUIRED/CC |

☐ Attempted    ☒ Completed

Address: 04400 [ ] PLANK [ ] RD [ ] [ ]

City: [ ] State: [ ] Zip: [ ] - [ ]

District/Zone: 1F1   Location Type: [ ]

Begin Date: 1 0 / 1 3 / 2 0 1 2   Time: 0 1 3 5

End Date: 1 0 / 1 3 / 2 0 1 2   Time: 0 1 3 5

Lighting: [ ]   Weather: [ ]   Gang Activity: [ ]

Bias Motive: [ ]   Premises Enter: [ ]   ☐ Force Used  ☐ Home Inv

Point Entry: [ ]   Point Exit: [ ]   Means Entry: [ ]

Tools Used: [ ]   Entry Dir: [ ]   Exit Dir: [ ]

☐ B-Buying Receiving
☐ C-Cultivation/Manufacturing/Publishing
☐ D-Distributing/Selling
☐ E-Exploiting Children
☐ O-Operating/Promoting/Assisting
☐ P-Possessing/Concealing
☐ T-Transporting/Transmitting/Importing
☐ U-Using/Consuming
☐ I-Pos With Intent To Sell
☐ X-Other

☐ Consumed Alcohol  ☐ Photo/Video  ☐ Used Computer Equipment  ☐ Used Drugs  ☐ Prints Lifted

Weapons: [ ] [ ] [ ]

Comments: [ ]

## Offense

Offense Type: [ ] ☐ Attempted  ☐ Completed

Address: [ ] [ ] [ ] [ ]

City: [ ] State: [ ] Zip: [ ] - [ ]

District/Zone: [ ]   Location Type: [ ]

Begin Date: [ ] / [ ] / [ ]   Time: [ ] [ ]

End Date: [ ] / [ ] / [ ]   Time: [ ] [ ]

Lighting: [ ]   Weather: [ ]   Gang Activity: [ ]

Bias Motive: [ ]   Premises Enter: [ ]   ☐ Force Used  ☐ Home Inv

Point Entry: [ ]   Point Exit: [ ]   Means Entry: [ ]

Tools Used: [ ]   Entry Dir: [ ]   Exit Dir: [ ]

☐ B-Buying Receiving
☐ C-Cultivation/Manufacturing/Publishing
☐ D-Distributing/Selling
☐ E-Exploiting Children
☐ O-Operating/Promoting/Assisting
☐ P-Possessing/Concealing
☐ T-Transporting/Transmitting/Importing
☐ U-Using/Consuming
☐ I-Pos With Intent To Sell
☐ X-Other

☐ Consumed Alcohol  ☐ Photo/Video  ☐ Used Computer Equipment  ☐ Used Drugs  ☐ Prints Lifted

Weapons: [ ] [ ] [ ]

Comments: [ ]

## Baton Rouge Police Department

Printed by: PC10023 - SMITH,ABLENELL | 12 - 00106939

### Person Information

☐ Victim ☐ Complainant ☒ Suspect ☒ Arrestee ☐ Witness ☐ Prop/Veh Owner ☐ Business
☐ Financial ☐ Government ☐ Religious ☐ Society ☐ Other/Unknown ☐ Custodian —

| | | | | | |
|---|---|---|---|---|---|
| Name, Last: | TAYLOR | Name, First: | ERNEST | MNI #- | 9 0 | 0 0 1 2 6 5 8 7 |

Middle Name: _____ Suffix: _____

Social Security: ▮▮▮▮▮

Date of Birth: ▮▮ / ▮▮ / ▮▮▮▮   Report Age: 052

Age From: 052 to: 052 Sex: M Race: B Ethnicity: ____

Height/From: 5 0 8 to: 5 0 8 Weight/From: 300 to: 300 Resident Status: _____

Eye Color: BRO Hair Color: BLK Birth Place (City): LA State: __

Address: ▮▮ ☐ ▮▮▮ ☐ Apt: __

Phone: ▮▮▮▮ Hours There/From: ____ to: ____

City: BATON ROUGE State: LA Zip Code: ▮▮▮ _____

Driver License: ▮▮▮ State: LA Exp Year: ____ ☐ Juvenile

Comments: _____

### Employer Information

Employer's Name: _____

Address: ☐ ☐ _____ ☐ Apt: __

City: _____ State: __ Zip Code: _____ - _____

Phone: ( ) - Hours From: ___ Hours To: ___

Start Date: __ / __ / ____

### Alias Information

Name: TAYLOR          ERNEST Date of Birth: ▮▮▮▮▮

Social Security: 0 0 0 - 0 0 - 0 0 0 0

Name: _____ Date of Birth: __ / __ / ____

Social Security: ___ - __ - ____

Name: _____ Date of Birth: __ / __ / ____

Social Security: ___ - __ - ____

## Baton Rouge Police Department

Printed by: PC10023 - SMITH,ABLENELL 12 - 00106939

## Suspect

Type Weapon: [ ] [                                      ]

Caliber/Gauge: [                        ] [ ] Estimated  [ ] Exact

Use of Weapon: [                        ]

Type of Arrest: [ T ]

| Injury Type | | |
|---|---|---|
| [X] None | [ ] Unconscious | [ ] Broken Bones |
| [ ] Internal Injuries | [ ] Minor Injury | [ ] Lacerations |
| [ ] Major Injuries | [ ] Loss of Teeth | [ ] Killed |

Arrest Date: [1][0] / [1][3] / [2][0][1][2]   Time: [0][1] : [5][5]

[ ] Warrant Arrest    [ ] Summons/Cited    [ ] Probable Cause

Miranda Warning Given
[X] Orally  [ ] Waiver # [          ]

Arrest Location: [04400] [  ] [ PLANK                    ] [RD] [  ] Apt: [          ]

## Charges

| File # | Charge / Statute | Ticket # |
|---|---|---|
| 106939-12 | 11:283 - HEADLIGHTS REQUIRED/CC | |
| 106939-12 | 13:95.3 - POSS WPN WHERE ALCOHOL SOLD/CC | |
| 106939-12 | 13:108 - RESISTING AN OFFICER/CC | |
| 106939-12 | C.CR.P. ART 575 - FUGITIVE | |

TAYLOR,ERNEST-Suspect - Arrestee

# Baton Rouge Police Department

Printed by: PC10023 - SMITH,ABLENELL

12 - 00106939

## Vehicle(s) Information

VEH #: `12` `0 0 0 6 5 7 8 2`  ☐ Stolen  ☐ Recovered  ☐ Victimized  ☒ Suspect  ☐ Towed  ☐ Other

Vehicle Make: `CADILLAC`  Style: 

Vehicle Model: `BROUGHAM`  Engine Type:  Year: 

Color 1: `GRY`  Color 2:  Value: `$500.00`

License Number: ▇▇▇▇  State: `L A`  Year: 

VIN Number:  Sticker#: 

Characteristics: 

Release Info: 

☐ Keys in car  ☐ Doors locked  ☐ Property in car  Value___

### Recovery Information

Address:  Apt: 

City:  State:  Zip Code:  -

Recovered By: 

Date:  /  /  Time: 

Condition:  Recovery Value: 

### Tow Company Information

Name: 

Address:  Apt: 

City:  State:  Zip Code:  -

Phone Number: (   )   -

### Insurance Information

Insurance Co. Name: 

Policy Number:  Expiration Date:  /  /

Agent's Name:  Phone Number: (   )   -

Address:  Apt: 

City:  State:  Zip Code:  -

**Baton Rouge Police Department**

Printed by: PC10023 - SMITH,ABLENELL    12 - 00106939

## Property Information

| ☐ Found | ☐ Burned | ☐ Counterfeit | ☐ Damaged | ☐ Recovered |
|---|---|---|---|---|
| ☐ Seized | ☐ Stolen | ☐ Othr/Unk | ☒ Evidence | ☐ Personal Property |

Property Type: *RIFLE*    Brand: *HI POINT*    Color: 

Model: *995*    Size    Tag No: 

Value: *$0.50*    Serial Number: *B86117*

Date Reported: *1* *0* / *1* *3* / *2* *0* *1* *2*    Caliber: *9MM*

Identifying Characters 

Drug Quantity: .    Unit Meas.:    Drug Type:    Quantity: 

### Recovery Information

Address:    Apt: 

City:    State:    Zip Code: -

Recovered By: 

Recovery Value: *$0.00*    Condition 

## Property Information

| ☐ Found | ☐ Burned | ☐ Counterfeit | ☐ Damaged | ☐ Recovered |
|---|---|---|---|---|
| ☐ | ☐ Stolen | ☐ Othr/Unk | ☒ Evidence | ☐ Personal Property |

Property Type: *RIFLE*    Brand: *YUGO*    Color: 

Model: *59/66*    Size    Tag No: 

Value: *$200.00*    Serial Number: *V-696561*

Date Reported: *1* *0* / *1* *3* / *2* *0* *1* *2*    Caliber: *7.62*

Identifying Characters *SKS ASSAULT RIFLE*

Drug Quantity: .    Unit Meas.:    Drug Type:    Quantity: 

### Recovery Information

Address:    Apt: 

City:    State:    Zip Code: -

Recovered By: 

Recovery Value: *$0.00*    Condition

## Baton Rouge Police Department

Printed by: PC10023 - SMITH,ABLENELL    12 - 00106939

### Property Information

| ☐ Found | ☐ Burned | ☐ Counterfeit | ☐ Damaged | ☐ Recovered |
|---|---|---|---|---|
| ☐ *Seized* | ☐ Stolen | ☐ Othr/Unk | ☒ Evidence | ☐ Personal Property |

Property Type: *RIFLE*    Brand: *SQUIRES BI*    Color: 

Model: *16*    Size:    Tag No: 

Value: *$50.00*    Serial Number: *A151444*

Date Reported: *1 0 / 1 3 / 2 0 1 2*    Caliber: *.22*

Identifying Characters: *BRAND: SQUIRES BINGHAM*

Drug Quantity: *.*    Unit Meas.:    Drug Type:    Quantity: 

#### Recovery Information

Address:    Apt: 

City:    State:    Zip Code:    - 

Recovered By: 

Recovery Value: *$0.00*    Condition: 

### Property Information

| ☐ Found | ☐ Burned | ☐ Counterfeit | ☐ Damaged | ☐ Recovered |
|---|---|---|---|---|
| ☐ | ☐ Stolen | ☐ Othr/Unk | ☐ Evidence | ☐ Personal Property |

Property Type:    Brand:    Color: 

Model:    Size:    Tag No: 

Value:    Serial Number: 

Date Reported:  /  /     Caliber: 

Identifying Characters: 

Drug Quantity:    Unit Meas.:    Drug Type:    Quantity: 

#### Recovery Information

Address:    Apt: 

City:    State:    Zip Code:    - 

Recovered By: 

Recovery Value:    Condition:

| *Baton Rouge Police Department* | Printed by: PC10023 - SMITH,ABLENELL | *12 - 00106939* |

## Narrative

On 10/13/12 at approximately 0135 hours Ofcs. J. Thomas and P. Wennemann were patrolling the 4000 block of Plank Rd. when they observed a gray Cadillac Brougham (████████████) leave the parking lot of Romeo's Old School Lounge (formally The Boss Lady) (3827 Plank Rd.) without any lights on.

The officers initiated a traffic stop on the vehicle in the 4400 block of Plank Rd. (Plank at Sherwood St.). Ofc. Thomas personally contacted the driver, identified as Ernest Taylor, at his unit. As they spoke Cpl. Wennemann approached Ernest's vehicle from the open driver's side door. In plain view Cpl. Wennemann noticed the stock of what he believed to be a shotgun on the floor resting against the driver's seat. Cpl. Wennemann approached the open vehicle and as he got closer he noticed a black rifle positioned in between the front seats.

Ofc. Thomas at this time proceeded to escort Ernest to the back of his police car where he could be secured in the back seat. When Ofc. Thomas grabbed Ernest's arm Ernest pulled his arm away and backed away refusing to be escorted. Ofcs. Thomas and Wennemann were then able to handcuff Ernest and place him in the back seat of Ofc. Thomas' police car.

Furhter investigation of the guns the officers found them to be a HiPoint 9mm and a Squires Bingham .22 caliber.

Cpl. Wennemann informed Ernest of his Miranda Rights and that he was under arrest for Possession of a Firearm Where Alcohol is Sold, Resisting an Officer and Headlights Required. A warrants check on Ernest produced a misdemeanor warrant through the East Baton Rouge Parish Sheriff's Office for Aggravated Assault. Cpl. Wennemann informed Ernest of this warrant. He stated he had already been to court for the warrant and he was no longer wanted.

The officer's asked Ernest if he had someone who could come get his car, if he wanted it towed, or parked at 1st District. Ernest elected to have his car parked at 1st District. Ernest was informed that his car had to be inventoried before it was parked. He was asked if there were any other guns or anything of value in the car that the officers needed to know about. He stated NO. When the officers opened the trunk they found an SKS 7.62 cal. assault rifle.

Ernest was placed under arrest for Possession of a Weapon Where Alcoholic Beverages are Sold and/or Consumed, Resisting an Officer, Headlights Required, and Fugitive from EBRSO. He was booked into Parish Prison and his car was parked at 1st District by Ofc. J. Daniels.

Cpl. Wennemann placed the rifles into Evidence at the Evidence window.

Exhibit B

CITY PAWN #4
(225) 355-8090

5208 PLANK RD.
BATON ROUGE, LA 70805-
PAGE: 1 of 1   #: 80960
EMP: 429   DATE: 07/06/09

SALES RECEIPT.
BUYER'S NAME: ERNEST LEE TAYLOR
ADDRESS:                                    STATE: LA        ZIP: 70806-
CITY:            BATON ROUGE
Has this day purchased from CITY PAWN #4, the following described property:

|  | DESCRIPTION |  | AMOUNT |
|---|---|---|---|
| ITEM |  |  | 199.99 |
| 1) | INV #: G-97360-1        QTY: 1 |  |  |
| HANDGUN | JIMENEZ ARMS          J.A. NINE-CA |  |  |
|  | SERIAL # 009786 |  |  |
|  | SEMI AUTO 9MM |  |  |
|  | CALIBER: 9MM         ACTION: SEMI-AUTO | OK |  |
| 2) | INV #: G-97555-1        QTY: 1 |  | 79.99 |
| RIFLE | KASSNAR               16 |  |  |
|  | SERIAL # A151444 |  |  |
|  | .22/S/A RIFLE W/ CLIP |  |  |
|  | CALIBER: .22CAL      ACTION: SEMI-AUTO | OK |  |

TOTAL: $      279.98
SALES TAX: $       25.20

PAID IN FULL.            NO REFUNDS.
ALL SALES FINAL AND "AS IS".        TOTAL AMOUNT PAID: $    305.18

CITY PAWN #4                                    5208 PLANK RD.
(225) 355-8090                              BATON ROUGE, LA 70805-
                                        PAGE: 1 of 1   #: 72070
SALES RECEIPT.                          EMP: 318   DATE: 02/07/07
BUYER'S NAME: ERNEST LEE TAYLOR
ADDRESS:
CITY:        BATON ROUGE        STATE: LA      ZIP: 70806-
Has this day purchased from CITY PAWN #4, the following described property:
   ITEM              DESCRIPTION                        AMOUNT
1)       INV #: G-I-13733      QTY: 1                    399.99
  RIFLE    SKS                 59/66
           SERIAL # V-696561
           YUGO S/A RIFLE
           CALIBER: 7.62X39    ACTION: SEMI-AUTO

                                        TOTAL: $      399.99
                                        SALES TAX: $   36.00
PAID IN FULL.        NO REFUNDS.
ALL SALES FINAL AND "AS IS".     TOTAL AMOUNT PAID: $  435.99

CITY PAWN #4
(225) 355-8090

5208 PLANK RD.
BATON ROUGE, LA 70805-

LAYAWAY RECEIPT.
BUYER'S NAME: ERNEST LEE TAYLOR
ADDRESS:
CITY:                    BATON ROUGE

PAGE: 1 of 1   #: 72480
EMP: RHJ   DATE: 03/10/07

STATE: LA          ZIP: 70806-

Has this day purchased from CITY PAWN #4, the following described property:

| ITEM | DESCRIPTION | | AMOUNT |
|------|-------------|--|--------|
| 1) |  | | |
| RIFLE | INV #: G-84952-1    QTY: 1 | | 249.99 |
|  | HI-POINT         995 | | |
|  | SERIAL # B86117 | | |
|  | 9MM RIFLE | | |
|  | CALIBER: 9MM | | |
| 2) ITEM#: TERMS |  ACTION: SEMI-AUTO      OK | | 0.00 |
|  | QTY: 1.00 | | |
|  | 90 DAYS PAYMENT DUE EACH MONTH | | |

PAID IN FULL.          NO REFUNDS.
ALL SALES FINAL AND "AS IS".

TOTAL: $      249.99
LESS DEPOSIT: $     272.49
SALES TAX: $      22.50
TOTAL AMOUNT PAID: $       0.00

bpc#10-5807 · 12/17/1997 · BLANK FORM · BURRELL PRINTING CO., INC. · 1-800-631-5234

Exhibit C

CR/DISM

# CITY OF BATON ROUGE

versus

4/28/14
**DATE**

Ernest Taylor
**DEFENDANT**

12-CR-106939S
**NUMBER**

**NOW INTO COURT**, through the City Prosecutor's Office, comes the City of Baton Rouge, and with

respect, moves to dismiss the charge(s) in the above styled and numbered case, for the reason that:

1. _____  The evidence obtained thus far is insufficient to justify prosecution.
2. _____  The complaining witness has requested that the prosecution be discontinued - see signed statement.
3. _____  Citation or affidavit is inconsistent with evidence obtained.
4. _____  The defendant is deceased.  See attached.
5. _____  The defendant has been advised to refrain from any other violations of this nature in the future.  If billed or summoned again, all charges will be considered for prosecution.

6. ✓  _____

_____

_____

**WHEREFORE**, the City of Baton Rouge respectfully prays that the aforesaid be dismissed, as indicated above

on this 28 day of April, 2014.

| | | | |
|---|---|---|---|
| Lisa Freeman, City Prosecutor | Anderson Dotson, 1st Asst. Pros. | Devon Bardin, Asst. Pros. | Joseph Scott, Asst. Pros. |
| Ayn Stehr, Asst. Pros. | Brandi Lawrence, Asst. Pros. | Granton Miller, Asst. Pros. | Paolo Messina, Asst. Pros. |
| Blake Pino, Asst. Pros. | | | |

**ORDER**

The matter having been submitted to the Court, it is ordered that the motion to dismiss, filed herein by the
prosecution, is **GRANTED** or **DENIED** and the case is further ordered **DISMISSED**.

Baton Rouge, Louisiana, this 28th day of April, 2014.

**A TRUE COPY**

MAY 2 1 2014

E. Dotson

Admin. Spec. 1 Of City Court
03/2014   **Chief Dpy. Clerk Of Court**

#9159?

_____
**JUDGE, BATON ROUGE CITY COURT**

Exhibit D

**Baton Rouge Police Department**

Printed by: PC10153 - VAZQUEZ,CHANITA

14 - 00035155

**Narrative**

INITIAL

On April 29, 2014 at approximately 1011hrs I Officer J. Ardoin was dispatched to ▮▮▮ Alliquippa St. relative to an armed robbery of a residence where the complainant stated that a black male came in her residence armed with a handgun and stole her television.

Upon arrival it was learned that a black male subject had forced his way inside the victims residence armed with a handgun and stole her Emerson Television worth approximately 200.00dollars.

NOTHING FURTHER.

CONFIDENTIAL
DO NOT DUPLICATE

# Exhibit E

## Baton Rouge Police Department

Printed by: PC10153 - VAZQUEZ,CHANITA

# Incident Report

### Administration Information

| Report Number: | 1 4 0 0 0 3 5 1 5 5 0 0 0 | | Report Type: | INITIAL |
|---|---|---|---|---|

Report Date: 0 4 / 2 9 / 2 0 1 4   Time: 2 3 2 7   District/Zone: 1E1

Address: 03818 ___ ALLIQUIPA ___ ST ___ Apt: ___

Report Officer 1 - P10234   ARDION, JERMIAH A   Assign Date: 0 4 / 2 9 / 2 0 1 4

Report Officer 2 - ___

Investigator 1 - ___   Assign Date: ___
Review Date: ___

Investigator 2 - ___   Assign Date: ___
Review Date: ___

Assigned By: ___   Review Date: ___

UCR Status: PN   PENDING INVESTIGATION   Status Date: 0 4 / 2 9 / 2 0 1 4

CaseStatus: ___   Status Date: ___

### Primary Offense

Offense Type: 14:60/RNF   BURG/AGG RES NIGHT FORCE   ☐ Attempted   ☒ Completed

Address: ___ ALLIQUIPA ___ ST ___

City: BATON ROUGE   State: L A   Zip: ___ - ___

District/Zone: 1E1   Location Type: ___

Begin Date: 0 4 / 2 9 / 2 0 1 4   Time: 2 3 2 7

End Date: 0 4 / 2 9 / 2 0 1 4   Time: 2 3 2 7

Lighting: ___   Weather: ___   Gang Activity: ___

Bias Motive: ___   Premises Enter: ___   ☐ Force Used   ☐ Home Inv

Point Entry: ___   Point Exit: ___   Means Entry: ___

Tools Used: ___   Entry Dir: ___   Exit Dir: ___

☐ B-Buying Receiving
☐ C-Cultivation/Manufacturing/Publishing
☐ D-Distributing/Selling
☐ E-Exploiting Children
☐ O-Operating/Promoting/Assisting
☐ P-Possessing/Concealing
☐ T-Transporting/Transmitting/Importing
☐ U-Using/Consuming
☐ I-Pos With Intent To Sell
☐ X-Other

☐ Consumed Alcohol   ☐ Photo/Video   ☐ Used Computer Equipment   ☐ Used Drugs   ☐ Prints Lifted

Weapons: ___

Comments: ___

CONFIDENTIAL
DO NOT DUPLICATE

Report approved by Dean Guidry on 05/02/2014

**Baton Rouge Police Department**   Printed by: PC10153 - VAZQUEZ,CHANITA | 14 - 00035155

## Property Information

☐ Found   ☐ Burned   ☐ Counterfeit   ☐ Damaged   ☐ Recovered
☐ Seized   ☒ Stolen   ☐ Othr/Unk   ☐ Evidence   ☐ Personal Property

| | | | | |
|---|---|---|---|---|
| Property Type: | TV | Brand: | EMERSON | Color: | BLK |

Model: | | Size | 46INCH | Tag No: |

Value: | $200,00 | Serial Number: |

Date Reported: | 0 4 / 2 9 / 2 0 1 4 | Caliber: |

Identifying Characters |

Drug Quantity: | . | Unit Meas.: | | Drug Type: | | Quantity: |

### Recovery Information

Address: | | | | | | Apt: |

City: | | State: | | Zip Code: | | - | |

Recovered By: |

Recovery Value: | $0.00 | Condition |

## Property Information

☐ Found   ☐ Burned   ☐ Counterfeit   ☐ Damaged   ☐ Recovered
☐   ☐ Stolen   ☐ Othr/Unk   ☐ Evidence   ☐ Personal Property

Property Type: | | Brand: | | Color: |

Model: | | Size | | Tag No: |

Value: | | Serial Number: |

Date Reported: | | / | / | | | Caliber: |

Identifying Characters |

Drug Quantity: | | Unit Meas.: | | Drug Type: | | Quantity: |

### Recovery Information

Address: | | | | | | Apt: |

City: | | State: | | Zip Code: | | - | |

Recovered By: |

Recovery Value: | | Condition |

CONFIDENTIAL
DO NOT DUPLICATE

## Baton Rouge Police Department

Printed by: PC10153 - VAZQUEZ,CHANITA

# Incident Report

### Administration Information

| Report Number: | 1 4 0 0 0 3 5 1 5 5 0 0 1 | Report Type: | OFFENSE |
|---|---|---|---|
| Report Date: | 0 4 / 2 9 / 2 0 1 4   Time: 2 3 2 7 | District/Zone: | 1E1 |
| Address: | ▮▮▮  ALLIQUIPA  ST  Apt: | | |

| | | | Assign Date: | |
|---|---|---|---|---|
| Report Officer 1 - | P10234 | ARDION, JERMIAH.A | Assign Date: | 0 4 / 2 9 / 2 0 1 4 |
| Report Officer 2- | | | Assign Date: | / / |
| Investigator 1 - | | | Assign Date: | / / |
| | | | Review Date: | / / |
| Investigator 2- | | | Assign Date: | / / |
| | | | Review Date: | / / |
| Assigned By: | | | Review Date: | / / |
| UCR Status: | PN | PENDING INVESTIGATION | Status Date: | 0 4 / 2 9 / 2 0 1 4 |
| CaseStatus: | | | Status Date: | / / |

### Primary Offense

| Offense Type: | 14;60/RNF | BURG/AGG RES NIGHT FORCE | ☐ Attempted | ☒ Completed |
|---|---|---|---|---|
| Address: | ▮▮▮  ALLIQUIPA  ST | | | |
| City: | BATON ROUGE | State: L A | Zip: ____ - ____ | |

| District/Zone: | 1E1 | Location Type: |
|---|---|---|
| Begin Date: | 0 4 / 2 9 / 2 0 1 4   Time: 2 3 2 7 | ☐ B-Buying Receiving |
| End Date: | 0 4 / 2 9 / 2 0 1 4   Time: 2 3 2 7 | ☐ C-Cultivation/Manufacturing/Publishing |
| Lighting: | | ☐ D-Distributing/Selling |
| | Weather: | ☐ E-Exploiting Children |
| | Gang Activity: | ☐ O-Operating/Promoting/Assisting |
| Bias Motive: | | ☐ P-Possessing/Concealing |
| | Premises Enter: ☐ Force Used | ☐ T-Transporting/Transmitting/Importing |
| | ☐ Home Inv | ☐ U-Using/Consuming |
| Point Entry: | Point Exit: | Means Entry: | ☐ I-Pos With Intent To Sell |
| Tools Used: | Entry Dir: | Exit Dir: | ☐ X-Other |

☐ Consumed Alcohol   ☐ Photo/Video   ☐ Used Computer Equipment   ☐ Used Drugs   ☐ Prints Lifted

Weapons:

Comments:

**CONFIDENTIAL**
**DO NOT DUPLICATE**

*Report approved by Dean Guidry on 05/02/2014*

## Baton Rouge Police Department

Printed by: PC10153 - VAZQUEZ,CHANITA    14 - 00035155-001

### Person Information

☐ Victim   ☐ Complainant   ☒ Suspect   ☐ Arrestee   ☐ Witness   ☐ Prop/Veh Owner   ☐ Business

☐ Financial   ☐ Government   ☐ Religious   ☐ Society   ☐ Other/Unknown   ☐ Custodian   —

| | | | | | |
|---|---|---|---|---|---|
| Name, Last: | TAYLOR | Name, First: | ERNEST | MNI #- | 0 9 | 0 0 0 2 3 7 2 1 |

Middle Name: _____   Suffix: _____

Social Security: ███████████████

Date of Birth: ███████████   Report Age: 054

Age From: 054 to: 054   Sex: M   Race: B   Ethnicity: N

Height/From: 5 0 8 to: 5 0 8   Weight/From: 270 to: 270   Resident Status: _____

Eye Color: BRO   Hair Color: BAL   Birth Place (City): _____   State: _____

Address: ███████ ███████ ████   Apt: _____

Phone: ( ) .   Hours There/From: _____ to: _____

City: BATON ROUGE   State: L A   Zip Code: 7 0 8 0 5 - _____

Driver License: ███████   State: L A   Exp Year: 2016   ☐ Juvenile

Comments: _____

### Employer Information

Employer's Name: _____

Address: _____   Apt: _____

City: _____   State: _____   Zip Code: _____ - _____

Phone: ( ) .   Hours From: _____   Hours To: _____

Start Date: _____ / _____ / _____

### Alias Information

Name: _____   Date of Birth: _____ / _____ / _____

Social Security: _____ - _____ - _____

Name: _____   Date of Birth: _____ / _____ / _____

Social Security: _____ - _____ - _____

Name: _____   Date of Birth: _____ / _____ / _____

Social Security: _____ - _____ - _____

CONFIDENTIAL
DO NOT DUPLICATE

| Baton Rouge Police Department | Printed by: PC10153 - VAZQUEZ,CHANITA | 14 - 00035155-001 |

## Narrative

*14:64 ROBBERY/FIREARM: PENDING INVESTIGATION*

*LOCATION:* ▓▓▓ *ALLIQUIPPA ST*

*VICTIM/COMPLAINANT:* ▓▓▓▓▓▓▓

*SUSPECT: ERNEST TAYLOR*

*DATE: APRIL 29, 2014*

*TIME: 2333HRS*

==================================================================

*On April 29, 2014 at approximately 2333hrs Ofc. J. Thomas and I Ofc. J. Ardoin were dispatched to* ▓▓▓ *Alliquippa St. relative to an armed robbery. Dispatch advised that the complainant,* ▓▓▓▓▓▓ *stated that a black male subject, Ernest Taylor, had forced his way inside her residence armed with a handgun and stole her television.*

*Upon arrival Ofc. Thomas and I contacted* ▓▓▓ *who stated that she was sitting in her front living room when her front door was forced open.* ▓▓▓ *stated that a black male subject entered the residence whom she knows as Ernest Taylor armed with a small black firearm.* ▓▓▓ *stated that Taylor pointed the firearm at her and stated "I'm sorry I had to do this."* ▓▓▓ *stated that Taylor then took her blk Emerson Television worth approximately 200.00dollars and fled the scene.* ▓▓▓ *stated that she believed that Taylor had parked his vehicle down the street and ran to it.*

*Officer notes that* ▓▓▓ *stated that she knows the subject because they had previous dealings but it was never sexual.*

*Ofc. Thomas recognized Taylor's name from previos dealings in the area and was able to look up the subject's picture using ICJIS. Upon Ofc. Thomas locating the subject/picture* ▓▓▓ *immediately stated that he was the subject that forced his way inside her residence and stole her television. Ofc. Thomas was also able to locate an address for Taylor which was listed as* ▓▓▓▓▓▓▓

*Officer's arrived at* ▓▓▓▓▓▓▓▓ *and knocked on the front door in an attempt to locate Taylor. Upon knocking on the front door Taylor answered the door and was immediately secured in a set of handcuff's (DBL) and mirandized per Miranda Rights (understood). I then explained to Taylor that he was being detained due to him being identifed as a suspect in a aggravated burglary. Taylor was transported to First District Precinct while Ofc. Thomas went back to* ▓▓▓ *Alliquippa St. in an attempt to locate Rose to positively identify Taylor as a suspect. Once Ofc. Thomas arrived back at Alliquippa St. he was unable to locate the Victim, but was able to contact several subject's that wished to remain anonymous. The subject's stated that they knew Taylor but he was not the subject that Officer's had detained.*

*I advised Taylor that due to the fact we could not positively identify him as the suspect he would be released. I then transported Taylor back to his residence.*

*I note that prior to releasing Taylor he stated that he was going to have us*

CONFIDENTIAL
DO NOT DUPLICATE

| Baton Rouge Police Department | Printed by: PC10153 - VAZQUEZ,CHANITA | 14 - 00035155-001 |
|---|---|---|

**Narrative**

fired by contacting Mayor-President Kip Holden.

*NOTHING FURTHER.*

CONFIDENTIAL
DO NOT DUPLICATE

Exhibit F

September 13, 2005


Lieutenant Darryl Rice
Baton Rouge Police Department
Office of Internal Affairs


REF: Observations of Alleged Misconduct


As per our conversation a.m. hours this morning, this correspondence is being submitted as a *summary/brief*, which will synopsize New Mexico State Police observations of alleged and potential misconduct on the part of various officers from the Baton Rouge Police Department. Detailed correspondence from involved New Mexico State Police Officers are in draft form.  Once satisfactory office settings are available (computer – printer) these documents will be available.

On September 8, 2005, the twenty man contingent of New Mexico State Police Officers assisting the Louisiana State Police with Hurricane Katrina relief efforts were assigned to assist the Baton Rouge Police Department with general police services.  Shift assignments were as follows: Day Shift 0630 hours through 1830 hours – Night Shift 1830 hours through 0630 hours.   Ten officers were assigned to day shift and ten officers were assigned to night shift.

On the morning of September 9, 2005, at approximately 0600 hours, the ten morning officers reported for duty and were briefed by Captain Rhodes of the Baton Rouge P.D. At approximately 1830, ten officers reported for night shift assignments.   New Mexico State Police shift assignments were as follows:

## Night Shift

Sgt. Tom Christian
Off. Daniel Barde
Agt. Richard Williamson
Agt. Patrick Oakley
Agt. Jay Blakeney

Off. Greg Hall
Agt. Shane Arthur
Agt. Nathan Lucero
Agt. Joey Gallegos
Agt. Mitchell Maestas

**Day Shift**

| | |
|---|---|
| Sgt. Keith Duncan | Sgt. Robert Eshom |
| Off. Theodore Carr | Off. James Frietze |
| Off. Paul Flores | Off. Leonardo Ornelas |
| Off. Bryan Bird | Off. John Lytle |
| Agt. Sam Hooper | Agt. Jeff Rey |

On the morning of September 10, 2005, I was quickly briefed by Sergeant Tom Christian about various concerns our officers had relative to the conduct of members of the Baton Rouge Police Department. These concerns were condensed as follows:

- No probable cause for contact and enforcement
- Physical and unnecessary mistreatment of prisoners and public
- Inappropriate and unprofessional language
- Questionable police practices relative to the location of evidence – allegedly discarded by a fleeing suspect

At approximately 1120 hours, I traveled to the Michigan Command Post to confer with Captain Gorski and determine if Michigan State Police had similar experiences with the Baton Rouge P.D. Captain Gorski synopsized his officers concerns as follows:

- Racially motivated enforcement
- Inappropriate language
- Physical and unnecessary mistreatment of a hand-cuffed prisoner
- Officers from Baton Rouge P.D. Offered to let Michigan Officers beat a prisoner as a thank you for helping out with relief efforts
- Baton Rouge P.D. Officer(s) commented and or implied that it was their direction to make things as rough as possible, and discourage people from staying in Baton Rouge

I advised Captain Gorski that I would de-brief New Mexico State Police Officers once they awoke.

At approximately 1400 hours, I de-briefed three night shift officers relative to the previous evening's occurrences. Their concerns are synopsized as follows:

19

- Physical mistreatment of prisoners
- Destruction of private/civilian property
- Forced entry into private residence (unrelated to current investigations or incident at hand) followed by the arrest, physical mistreatment of a prisoner and subsequent un-arresting of said prisoner
- Baton Rouge P.D. Officer(s) commented and or implied that it was their direction to make things as rough as possible, and discourage people from staying in Baton Rouge. One NMSP Officer felt this comment was made with regard to New Orleans gang members that had taken up residency in Baton Rouge. Others had a different interpretation (see below)

At approximately 1600 hours, I made my concerns known to Louisiana State Police Lt. Martin. It was made known that I preferred that New Mexico State Police Officers be removed from this assignment; however, based on notification (short notice) issues I agreed to allow the September 10th/11th night shift contingent to remain on the assignment. With withdraw considerations in effect. Withdraw considerations will be detailed in later correspondence if necessary.

On September 11, 2005, at approximately 0630 hours, I spoke with NMSP Sergeant Tom Christian (night shift supervisor); he advised that additional incidents of concern were brought to his attention by night shift personnel. These concerns are synopsized as follows:

- General treatment of citizenry based on neighborhood and perceived societal class
- Mistreatment of violator on traffic stop… Officer crumbled drivers license – threw it to shoulder and told violator to go find it
- Physical mistreatment of cuffed sixteen year old prisoner/violator – in the presence of Baton Rouge field supervisors
- Failure to perform duties
- Baton Rouge Officer advised "I don't agree with it, but as long as my Captain tells us to harass these people – I'll do my job." This was not relative to the gang element as previously noted
- Miscellaneous stops, searches and contacts absent cause

- Unnecessary Tazing of an individual – followed by that individuals release from custody.

Following this partial de-briefing, I personally contacted Baton Rouge Police Personnel and simply advised that our personnel had been reassigned and would not be working the day or night shift.  Louisiana State Police Sergeant Nicole Kilgore was also contacted and advised that our personnel were being pulled immediately from this assignment.

On September 11, 2005, the above allegations/observations were presented in verbal form to the Louisiana State Police Command Staff, as well as, Chief Lebuff of the Baton Rouge Police Department.

As previously noted, this correspondence serves only as a summary of the events and observations of New Mexico State Police Officers.  A more detailed account of observations can be derived from Officer correspondence. At current, the New Mexico State Police will not place its personnel in a working environment with the Baton Rouge Police Department.

If I can be of further assistance my contact information is listed below.


Respectfully,

Major Daniel Lopez
NM State Police
Investigations Bureau

Office    505-827-9078
Cellular  505-469-2545

21

   

# DEPARTMENT OF PUBLIC SAFETY
## INTRA-DEPARTMENTAL CORRESPONDENCE

**DATE:**   September 13, 2005

**FROM:**   Agent ███████████████

**TO:**   Major Daniel Lopez

**SUBJECT:**   Baton Rouge Police Department

---

On September 9, 2005 I, New Mexico State Police Agent ███████ was assigned to patrol with the Baton Rouge Police Department (BRPD) from 1800-0600.  I observed what appeared to be several questionable traffic/pedestrian stops, searches, arrests and uses-of-force.  I reported those observations to New Mexico State Police Sergeant Tom Christian and New Mexico State Police Major Dan Lopez.  I was instructed to continue patrolling with the BRPD officers and report any other suspected officer misconduct.  I was also told not to discuss the issues with BRPD officers.

On September 11, 2005 Major Lopez instructed me to write this correspondence.

One incident occurred at an apartment complex.  BRPD Officers were conducting patrol operations in the area.  BRPD Officer Mack and I observed a young man standing near an apartment.  We parked our patrol car.  As we exited our patrol car the subject began to walk away from us.  We told him to stop but he disappeared from sight around a corner. We pursued him on foot.  We were unable to locate him, but believed that he had entered an apartment within the complex.  BRPD Officer Mack and I knocked on several doors, but no one answered.  He forced an apartment door open by kicking it in and entered an apartment to look for the subject.  The subject was not inside.  However, the resident of that apartment became upset because Officer Mack forced the door.  BRPD officers and I knocked on other doors and after about 5 minutes, the subject came outside from a nearby apartment.  BRPD officers handcuffed him, patted him down and placed him inside a patrol car.  BRPD officers entered the apartment that the subject was found in and searched it.  After searching the apartment, the BRPD officers released the subject.  I do not believe that the officers had a search warrant for any of the apartments or an arrest warrant for the subject.

Another incident occurred at a separate apartment complex.  BRPD officers were conducting patrol operations in the area.  BRPF Officer Mack and I observed a man sitting in the front, passenger side seat of a parked car in the parking lot.  We approached the man.  Officer Mack asked the subject to exit the car and began speaking with him. Another BRPD officer searched the car and found what appeared to be illegal narcotics underneath the front seat.  The subject stated that the vehicle belonged to his friend, who lived in a nearby apartment.  BRPD officers and I went to the apartment and knocked on the door.  A man answered the door.  BRPD officers entered the home and detained the

*[handwritten left margin:]* 38836-05  2136 N. Lobdell  M. Thomas  IA# 159-05  was not of search

*[handwritten left margin lower:]* report off.  nrs.  light search

*[handwritten bottom:]* FILE# 8355-05

*[handwritten bottom right:]* 33

*[handwritten bottom:]* 1 0-2

man.  There were what appeared to be illegal narcotics on top of a coffee table in the living room.  BRPD officers searched the home.  The officers took enforcement action, including issuing summons and arresting the man in the car.

Later during the shift, Officer Mack and I were patrolling and observed a man riding a bicycle in the road.  He initiated a traffic stop.  The subject immediately fled.  He jumped from the bicycle and fled on foot.  BRPD officers pursued him.  Officer Mack parked but, left his patrol car in reverse so, I had to get back into the car and re-park it.  BRPD officers caught the subject and arrested him.  They handcuffed him, brought him back and placed him inside a patrol car.  The subject was injured.  I saw a BRPD officer slam a car door on his legs after he was handcuffed.  An officer also sprayed him in the face with pepper spray after he was secured in the back of the patrol car.  I do not know the name of that officer.  Officer Mack went to the truck of his patrol car then walked the path that the subject fled on.  Officer Mack returned from the path with a small handgun.

On several occasions, BRPD officers made traffic and/or pedestrian stops.  I observed numerous stops where BRPD officers did not appear to have probable cause.  Officers routinely searched people and vehicles when they did not appear to have probable cause.

While on patrol, BRPD officers and I were dispatched to a "shots-fired" call at the Renaissance Center.  A man fired a handgun at police, who were on foot, then drove away.  When I arrived, there were between 20-50 civilians and 20-30 officers on scene.  Police officers were talking to people in the crowd and trying to get them to go home.  Two men began arguing with one another.  One man was a security guard and the other man appeared to be a customer.  The security guard told the man to go home.  He asked the police to tell the man to go home.  The customer, who was not a suspect in the shooting, began arguing with a BRPD officer.  The man became verbally abusive and did not comply with the officer's commands.  The man did not appear to be armed.  There were about 5-6 BRPD officers in the immediate area of the man.  The BRPD officer drew his Taser and "tased" the man.  The man fell to the ground.  The officer approached the man while he was on the ground and "tased" him at least one more time.

This concludes my correspondence.

23

2 of 2

09/29/2005 15:20 FAX   505 827 9063        INVESTIGATIONS BUREAU                     ☑011/023



# DEPARTMENT OF PUBLIC SAFETY
## INTRA-DEPARTMENTAL CORRESPONDENCE



DATE:  9-11-2005

FROM:  Gregory A. Hall

THROUGH:

TO:  Major Dan Lopez

SUBJECT:  Baton Rouge Police Department

Both 9/9 and 9/10/05, I was on patrol with Officer Chad King from about 1800 to 2200 hours.  Officer King is a good officer but does seem to handle black people differently than he would a pretty Caucasian woman.  Each time Officer King would make contact with a Caucasian person he would be friendly and pleasant.  But when he spoke to a black person he was very loud, rude and demeaning.  On Saturday 9-10-05 we responded to a possible drug overdose at 12041 Providence Street.  The black male was sitting in a chair in the living room and holding his chest.  Officer King asked him what kind of drugs and how much he had taken.  The black male told Officer King that he did not do drugs.  Officer King's demeanor changed and he started yelling at the man to stop lying and that he could tell the man was a crack addict.  EMS came and took vidal signs and the black male agreed to go to the hospital.  While the black male was loaded into the EMS truck a black female walked up to Officer King and informed she was the wife of the black male and wanted to know what his condition was.  Officer King again got very rude and started yelling at the female about how he could be fighting crime if he did not have to respond to calls with stupid people high on drugs.  At this time numerous black people, the black males' family and children were standing in the parking lot.  Officer King continued to yell and demean the black female about drug use and how it was going to kill them all.  We then went to a good part of town to a coffee shop.  Officer King was quite and pleasant with all the Caucasian customers and especially if the person was a female.

On 9-10-05 approximately 2145 hours I started riding with Officer Jim Cuter another good officer who I think has a positive proactive policing demeanor.  He made no biased comments however he did make some inappropriate actions.  Officer Cuter had driven me around the town most of the night showing me the problem areas and the LSU campus.  We heard a call of shots fired at a club that underage youth used.  We went to the club and I listened to approximately 20 plus officers talk about what had happened.  During this conversation I heard one officer loudly say, "As long as they want us to harass these people and run them out of town, I will gladly do it".  This incident stemmed from two officers that had responded to a fight in progress.  They arrived and broke the fight up.  Numerous people were involved and not all were interviewed at this time.  From across the street numerous shots were fired towards the directions of the two police officer and crowd.

After the officers had talked for quit a while, three to five police cars took off

with lights eastbound from the club. We followed and found the officers at the intersection of Pampus and Plank approximately 0200 hours. Numerous youth were walking eastbound down the street. Officers were exiting their vehicles and grabbing the kids and throwing them on the hood of unit 1029. The kids were searched and a gun was located. When the gun was located officers seemed to apply aggressive pressure on hands, wrist, heads and backs of the youth on the hood, as many of the youths complained that they were being hurt. Each youth was handcuffed, forced to the ground to sit on their butts and told to cross their legs. The officer driving unit 1029 seemed to be in charge of investigating and started to question the kids. The first kid gave his name and DOB. The middle kid made the comment, "Fuck the Police". The officer went closer to the kid and hit the kid in the head with his note pad. He started yelling at the kid and struck him numerous more times with the pad of paper. He then turned to the last kid · which gave him all the information requested. He turned to the middle kid a second time and hit him some more with the pad of paper and told him he was a punk and a real man would tell him his name. I had already walked back, out of ear shot and could not hear what the middle kid had said, but the officer all of the sudden grabbed the kid by the throat and started chocking him. The kid tried to break free and the officer jumped on top of him placing his right knee in the handcuffed youth's chest and continuing to choke him with left hand. The kid was on his back while the officer was on top of him and his hands were hand cuffed behind his back. The officer bent and turned the kids neck to place the kid's left cheek on the ground and held it in that position with his right knee while he continued to interrogate the other two kids. He then got off the kid and forcefully rolled the kid on his chest and told him to not take his face out of the grass. The officer got up and grabbed the third kid, throwing and pushed him to the side and walked to his unit. The officer looked back and had seen that the middle kid had rolled only his head to the right side, while still laying flat on the ground. The officer ran over to the middle kid and started yelling at him to put his face in the grass and kicked him three times until the kid complied. During this time I heard the kid yell, "I can't breath". At this time approximately 20 officers were on scene. Four of the officers were in green jump suites and were leaning on a vehicle and laughing about what the officer was doing to the young kid. Supervisors were on scene and did not stop the officer's actions while dealing with a 16 year old black male that they had no probable cause to stop, was illegally searched and had nothing in his position that was illegal.

We then traveled back into district to a place that was earlier pointed out as a problem area. The first police car turned on its lights and an obviously intoxicated black male was stopped forced to the hood of the patrol unit and searched. He had been stopped due to carrying a bottle of beer. The beer was found to not be opened and the black male was allowed to walk. The second time was four black males walking down the street and they too were forced onto the hood of the vehicle, searched and allowed to leave. A third time was that a vehicle had come into the area and was followed by my temporary partner Jim Cuter. Officer Cutter turned on his lights and stopped the vehicle without probable cause that I had seen. The driver was taken out of the vehicle and placed in handcuffs, put in the rear seat of the patrol unit and the passenger placed on the ground next to the subject vehicle's right rear tire. The vehicle was searched and two open containers were located. Both driver and passenger were given citations. The driver had extremely slurred speech, blood shot watery eyes and a strong odor of both alcohol and burnt marijuana. The driver staggered as he walked and was obviously intoxicated. Officer Cuter allowed the driver to get back into his vehicle with his

25

passenger and drive away. · Lastly, we left that scene and drove around the corner to find numerous people standing and sitting around two vehicles in the driveway of a residence. All persons were forced onto the hoods of the patrol units and searched. Both vehicles were searched and two bags of marijuana and two open containers were located. Citations were issued and we left the area. As we were leaving the area, Officer Cuter told me, "I don't really like what the Captain is making us do, I do it the best I can and still be able to sleep at night, but I really hate what Officer ????? did with that kid and I wont put up with that crap".

I personally believe that most of the officers of the Baton Rouge Police Department are good officers that are being directed by their supervisors to crack down on the public. I don't know if they have been given any type of direction as to what is right or wrong as each officer is doing things his own way. I do believe that the province of Baton Rouge is in dire straights with the almost doubled population, with numerous relatively new officers and without having the veteran experience to guide them. I do feel that most of the night officers that I had contact with had some type of comment or attitude towards black people in general.

GAH:gah

    

# DEPARTMENT OF PUBLIC SAFETY
# INTRA-DEPARTMENTAL CORRESPONDENCE

---

**DATE:** September 11, 2005

**FROM:** Agent Richard Williamson

**THROUGH:** Sergeant Tom Christian
**TO:** Major Daniel Lopez

**SUBJECT:** Baton Rouge Police Department

---

On Friday September 9, 2005 I was assigned to work the
night shift in District One in Baton Rouge La. I was
assigned to patrol with Ken Clark. The area was a high
crime concentration area.

Officer Clark and I made contact with a suspicious male
walking down the road way in an area known for drug
traffic. Ofc. Clark made contact with the subject to I.D.
and check for warrants. The subject was clear of warrants
and began to protest being detained. He was slammed onto
the hood cuffed and placed in the back of the unit and
detained while the officer wrote two citations for
pedestrian in the roadway and disturbing the peace after
consulting with other officers as to what crimes he could
charge.

The remainder of the evening was spent assisting other
officers with their calls. We assisted other officers with
the closing of two different bars. To clear the juveniles
out of the area the officers sprayed mace with out warning
at about waist height. The crowd cleared coughing and
sneezing.

Ofc. Clark and I assisted his corporal "Mack" with a
fleeing suspect call at a large apartment complex. When we
arrived the suspect had ran into an apartment and officers
were trying to locate him. The Corporal kicked in one door
across the breezeway and did not find the suspect. The
resident asked who would fix his door and he was verbally
abused and sent back into his apartment.
The suspect was found in a nearby apartment and removed to
the patrol unit. The apartment was then searched and
"tossed" as was the car believed to belong to the suspect.
The officers met to create reasons for the search and use

of force, a nearby call for shots fired was applied to this call when the reason for the contact and chase actually was because the subject turned and walked away from police with out talking to them when called.

On a positive note, my time with Officer Bret Hart on the early shift and on the night of Saturday September 10, 2005 was very positive and professional. Ofc. Hart had seven arrests and three DWI's and was very professional and courteous the entire night.

RAW:raw

28




# DEPARTMENT OF PUBLIC SAFETY
## INTRA-DEPARTMENTAL CORRESPONDENCE

**DATE:** September 11, 2005

**FROM:** Agent Nathan Lucero

**TO:** Major Daniel Lopez

**SUBJECT:** Baton Rouge Police Department

On Friday, September 9, 2005 I was assigned to work with the Baton Rouge Police Department in the 3rd District. At approximately 10:00 p.m. I was turned over to a new officer and began to patrol with the unit known as the "Dog Crew". At this time the officer began to tell me about how they have gone into the black neighborhoods and have been beating them down since the Hurricane happened. At this time I began to notice the officer pointing his spot light in the faces of black civilians telling them "What are you doing standing in the road, Are you stupid, Get out of the road" and would then drive off. The black civilians were on the sidewalks and were not bothering anyone. The officer continued to describe the residents in these neighborhoods as basically animals.

The officer began to stop vehicles for no apparent reason and would treat the subjects very rude and would begin to search the vehicle with no probable cause and without permission from the driver. The officer would pull the back seat out and pretty much destroy the vehicle and would tell the driver" Get the hell out of here", the officer would not write a citation or explain to the driver what was going on. These types of traffic stops occurred several times. At one point we were patrolling and noticed a vehicle parked at a store putting water in the radiator when the officer pulled behind him. The officer walked up did not speak to the subjects but began to search inside the vehicle. He was throwing things around in the vehicle pulling bottles out of the vehicle and pouring out the contents of it for no reason. By this time the subjects attempted to speak to him and he stated to them to "Shut up" the officer then pull out a knife and began to poke at the dash board and then scarped off the registration sticker from the window. At this time the officer got back into his unit and we drove off not telling the subjects anything. The officer then stated "That will cost them another $150.00 to get a new registration".

This officer then contacted another officer and we left the 3rd District and went to the 1st District. We met up with some other officers and at this time I saw Agent Shayne Arthur were we spoke. We both noticed the same type of actions occurring in both Districts. The officer and I began to patrol in the 1st District where again the officer would stop vehicles for no apparent violations and would treat the subjects in the vehicle very rude and would search the vehicle with no probable cause and then tell them "To get the hell out of here". By this time I was very disappointed with the actions taking place and I told the officer that I was tired and I had him drop me off at State Police facility. My shift was to end at 6:00 a.m. but I ended at 4:30 a.m.

1

On Saturday, September 10, 2005 I was again assigned to work with the Baton Rouge Police Department in the 3rd District. Again at approximately 10:00 p.m. I was turned over to the "Dog Crew". I was with the same officer as the pervious night. We began to patrol the area when the officer began to spot light black civilians telling them "Are you stupid, get out of here". At this point we stopped a vehicle and the officer began to speak to the driver, I walked up and began to talk to the passengers. I turned around and saw the officer writing a citation and telling him "If you would have kept your mouth shut and not lied you would not have got this". The driver told the officer I will be at court, the officer became upset and bent his drivers license and threw it and told him "Go pick it up" and we left.

At this time we met with other officers and went to the area they call "Tiger Land" this is an area by the college campus. The area was a white and wealthy neighborhood. The officers and continued to tell the people "Hello and how are you", "Have a good night and be careful". We left that area and went back to the 1st District were we had again to spot light black civilians in the face. At one point I asked the officer the speed limit and explained to him that the vehicle in front was speeding and swerving all over the road. We stopped the vehicle and made contact with the driver. The driver was intoxicated and admitted to drinking. The officers stated that they did not fell like dealing with this so they got in his vehicle drove across the street and parked it and let the subject go. They did not cite him for any type of violation. As the night continued on Agent Jay Blakeney was behind me with the officer he was riding with when a vehicle accident occurred. The two officers began to talk with the subjects and an ambulance was called. The passenger of the vehicle that had been hit was taken to the hospital. The driver of the other vehicle told us he had been drinking. The officers waited for the other vehicles to leave and at this time got into the vehicle drove it and parked it. The officer then told the male subject to get out of there. I asked them are you going to let him go and they stated yes he just has mental problems. Agent Blakeney told them hey he had been drinking you can not let him walk. At that time we saw the subject walking in the middle of the road. The subject was called back to the police units and was given a ride home. The subject was not cited for any type of violation. Agent Blakeney and I then asked the other officer to bring us back to the State Police facility.

Both nights I noticed subjects being stopped for no reason, searches being performed with no probable cause and people civil rights being violated. I witnessed officers referring African Americans as animals and that they needed to be beaten down.

This concluded my involvement with the Baton Rouge Police Department.




# DEPARTMENT OF PUBLIC SAFETY
## INTRA-DEPARTMENTAL CORRESPONDENCE

**DATE:** September 13, 2005

**FROM:** Agent Patrick Oakley

**TO:** Major Daniel Lopez

**SUBJECT:** Baton Rouge Police Department

On Saturday, September 10, 2005 I was assigned to assist the Baton Rouge Police Department on patrol in the east Baton Rouge area known as District 3. The period of this patrol was 18:00 hours to 06:00 hours. During the period of 18:00 hours and 23:00 hours I rode with Jay Lampleyrous in his marked Baton Rouge Patrol vehicle.

On the above date at approximately 22:30 hours Officer Lampleyrous observed a dark in color Chevrolet Suburban in the parking lot of a shopping mall. The vehicle was in the parking lot with a smaller four-door sedan. Officer Lampleyrous stated to me that this activity appeared suspicious in nature. Officer Lampleyrous did not call the traffic stop off with his radio dispatch. We approached the vehicle head on and stopped the vehicle in the parking lot. Officer Lampleyrous determined that the stop was high risk and exited his vehicle with his weapon drawn. I exited the patrol vehicle and approached the vehicle with my issued Glock 31 .357 Sig Hand gun drawn given the potential risk of this traffic stop with a vehicle positioned head on relative to the police unit. I had my issued Glock handgun pointed at a low ready position at the driver of the vehicle and instructed the small sedan vehicle with a black female driver to back away from the traffic stop. I instructed the both the driver and the passenger (front right seat) to put their hands on the dashboard of the vehicle. Officer Lampleyrous had the subjects (both black adult males) exit the vehicle and place their hands on the hood of the vehicle. Officer Lampleyrous searched both subjects and had them standby near the vehicle as he searched the interior of the vehicle. Officer Lampleyrous recovered two weapons from the front floorboard of the vehicle, a Keltec 9mm handgun and a Glock 9mm handgun with a loaded 30 round magazine in the pistol.

Officer Lampleyrous identified both black males as local residents of East Baton Rouge and one as a storeowner of a hip-hop clothing store located nearby. Officer Lampleyrous asked the subjects why they were armed and they replied that they had to protect themselves from the New Orleans gangs. Officer Lampleyrous did not run the subjects or the weapons through dispatch, nor did he take the weapons into safekeeping even after it was clear to me that these subjects were armed and actively looking for these New Orleans gang members. Officer Lampleyrous did not indicate why he searched the vehicle and lacked reasonable suspicion and probable cause, in my opinion.

On Saturday, September 10, 2005 at approximately 23:00 hours I rode with Officer Tim Browning in his marked Baton Rouge Police unit until 05:30. During my patrol with Officer Browning I observed him execute traffic stops and pedestrian contacts with subjects with little or no probable cause for the stops. Each time the subjects were searched and in the case of vehicles, the vehicles were searched.

On Sunday, September 11, 2005 at approximately 1:00 a.m. we arrived in the area of a disturbance and shooting at a bar called the Renaissance Center in District 1. Units had responded to the disturbance and while at the scene shots had been fired in the area. The suspects had fled the scene, however one subject at the bar had been Tazered in an unrelated matter. Officer Tim Browning and I drove approximately 1 mile up the street from the Renaissance Center and came in contact with a Baton Rouge Police Department traffic stop with 5 police units at the scene. The officers had 5 black males in custody, two of the subjects were in investigative detention inside police cars while three black males were instructed to sit in the grass on the shoulder of the roadway with their ankles crossed. All three of these subjects were handcuffed behind their backs. A white male Baton Rouge Police officer driving police unit 1029 was asking the three black males for personal information and writing the information down on a small note pad.

The officer started to interview one of the black males who appeared 16 years old. The black male refused to provide his identity to the officer at which point the officer began to hit the black male on the head and face with the note pad repeatedly. The young black juvenile male continued to refuse to cooperate at which point the officer placed his right hand on the subjects throat and pushed him down upon the grass prone, holding the subject in a prolonged choke hold. The juvenile black male was handcuffed behind his back, prone on his back with the officer choking him while kneeling on his chest.

The officer sat the subject back up and continued to question him, but the juvenile male still refused to cooperate. The officer used a pressure point hold on the subjects right jaw in an effort to make him comply with the questions. The pressure point hold is a submission hold I am familiar with and is used to control and subdue a combative subject. This juvenile black male was in custody and not resisting.

While with Officer Tim Browning we returned to District 3 and began to patrol predominantly black "title 3" (Browning's term) subdivisions where we made contact with several black male subjects walking on foot. Officer Browning made contact with these subjects with no reasonable suspicion or probable cause, performed pat downs and extracted items from the pockets of these individuals. Officer Browning referred to these subjects as "heathens."

On one traffic stop, the vehicle did not make any unusual driving actions or moving violations. The vehicle was stopped, searched and the driver cited for open containers. Again the stop lacked reasonable suspicion or probable cause and the driver was not advised or cited for the stop.

  

# DEPARTMENT OF PUBLIC SAFETY
## INTRA-DEPARTMENTAL CORRESPONDENCE

---

**DATE:**   SEPTEMBER 13, 2005

**FROM:**   OFFICER LEONARDO ORNELAS

**TO:**   MAJOR DAN LOPEZ

**SUBJECT:**   Baton Rouge Police Department

---

On Friday, September 9, 2005 I was assigned to ride along with Officer Brian Biletnikoff, District 1, Baton Rouge PD, LA. At approximately 0930 hours, Officer Biletnikoff saw a female walking down a residential road. He advised me that she was a known prostitute. Officer Biletnikoff called her over to our location, and asked her where she was going. I do not recall her response. Officer Biletnikoff then reached for her purse and asked her what she had in the purse. He then emptied the contents onto the hood of his unit and found a glass pipe with white residue in it. Officer Biletnikoff then patted her down. Officer Biletnikoff then asked her if she had any warrants and she said yes. Officer Biletnikoff then ran a warrants check on her.

During this contact, a second female was walking towards us. Officer Biletnikoff then asked her if she had a pipe and she said yes, and placed a Crown Royal bag on his hood. Officer Biletnikoff retrieved the glass pipe with white residue. Officer Biletnikoff had the first female sit in the rear seat of his unit until the warrant could be confirmed. The second female was issued a summons for the paraphernalia and released. The first female was placed under arrest upon confirmation of the warrant and booked at the District 1 office. I was able to read the officers narrative on the paperwork, and it said that he ran the first female for warrants first and found the pipe incident to arrest.

While on patrol, Officer Biletnikoff said he wanted to talk to a subject that he saw on a bicycle that appeared to have money in his hand. Officer Biletnikoff said the subject was approaching an apartment complex known for trafficking narcotics. He made a U-turn and slowly drove towards the complex. The subject on the bike exited the apartment complex parking lot, and got on the road. Officer Biletnikoff stopped the subject and asked him what he was doing over there. I

33

could not hear his answer to the officer. Officer Biletnikoff then searched and released the subject.

I also did a ride along with Officer Derek Evans. While on patrol with Officer Evans he pointed out a male subject on a bicycle. He said that every time he makes contact with him he has marijuana. Officer Evans told him to stop. The subject stopped and Officer Evans walked towards him and advised him to put his hands on his head. The subject complied, and Officer Evans searched the subject. Officer Evans then inquired about the bicycle and the subject said it belongs to his niece. The subject was then released. As the subject was getting on the bike he was laughing, and saying it was messed up that he got shook down in the middle of the road.

As we were driving away Officer Evans commented on how some of the neighborhoods do not mix or get along, but he sees this subject in all neighborhoods. I cannot recall if this occurred on the September 9th or 10th. The time was approximately 1630 hours.

During my time with these two officers I did not see them become verbally or physically abusive with anyone they came in contact with.

34

   

# DEPARTMENT OF PUBLIC SAFETY
## INTRA-DEPARTMENTAL CORRESPONDENCE

DATE: **9-11-2005**

FROM: Agent Jay Blakeney

TO: Major Daniel Lopez

SUBJECT: **Baton Rouge Police Department**

On Friday, September 9, 2005 and on Sunday, September 10, 2005, I had the opportunity to patrol with two Baton Rouge Police Officers during the "dog shift". On approximately four separate occasions I observed searches of vehicles and personal property with no probable cause. Officers at these incidents made contact with black civilians and had them exit the vehicles or personal property without consent from the owner.

On Sunday, September 11, 2005 approximately 0200 hours, I observed a driver stopped for swerving in the road and speeding. The driver was very intoxicated and admitted to drinking and driving. Officers called for the "DWI Unit" and the unit was busy. The officer decided to drive the drunk driver to his residence which was nearby and parked his vehicle in a nearby parking lot.

During this shift approximately 0230 hours, the officer I was assigned to and I were parked in the road waiting for a train to pass. A driver several cars behind us rear-ended a vehicle stopped for the train. The driver admitted to have at least five to six beers. A passenger in the vehicle that was struck was taken by ambulance to a local hospital. The "DWI Unit" was still busy so the officers let the drunk driver walk home with no arrest or citation. Myself and a fellow officer from my department advised the Baton Rouge Police Officer that it was not a good to let the drunk individual walk into traffic. One officer then decided to pick the drunken individual up and dive him to an unknown location. We then questioned the officer as to why the drunken individual was not arrested or cited. They responded by stating they did not smell any alcohol and the individual, but admitted he was probably under the influence of drugs.

JB:jb

1 of 1                                                                                                                35

# Complaint Signatures